IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,169

In the Matter of ANDREW M. DELANEY,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed November 26, 2014. Six-month suspension, which is stayed during a probationary period of 2 years, subject to the terms and conditions specified.

*Deborah L. Hughes*, Deputy Disciplinary Administrator, argued the cause, and *Duston J. Slinkard*, Deputy Disciplinary Administrator, and *Stanton A. Hazlett*, Disciplinary Administrator, were on the formal complaint for the petitioner.

*J. David Farris*, of J. David Farris Law Offices, of Atchison, argued the cause, and *Andrew M. Delaney*, respondent, argued the cause pro se.

*Per Curiam*:  This is an uncontested attorney discipline proceeding against Andrew M. Delaney of Hiawatha, an attorney admitted to the practice of law in Kansas in 2002.

On April 3, 2014, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent answered on April 15, 2014, admitting the allegations in the formal complaint. In December 2013 and January 2014, counsel for respondent submitted drafts of a proposed probation plan to the Disciplinary Administrator for comments and suggestions. On April 8, 2014, counsel for respondent finalized the

1

proposed probation plan and submitted it to the hearing panel and the Disciplinary Administrator.

A panel of the Kansas Board for Discipline of Attorneys held a hearing on May 6, 2014, at which respondent appeared in person and through counsel. The hearing panel determined the respondent violated KRPC 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); KRPC 1.4 (2013 Kan. Ct. R. Annot. 484) (communication); KRPC 1.8(e) (2013 Kan. Ct. R. Annot. 528) (conflict of interest); KRPC 3.2 (2013 Kan. Ct. R. Annot. 587) (expediting litigation); KRPC 8.1 (2013 Kan. Ct. R. Annot. 646) (timely response to disciplinary inquiry); and Kansas Supreme Court Rule 207(b) (2013 Kan. Ct. R. Annot. 336) (duty to aid Disciplinary Administrator in investigation of complaints).

Upon conclusion of the hearing, the panel made the following findings of fact by clear and convincing evidence and then made its conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

…..

"8.      Andrew M. Delaney (hereinafter 'the respondent') is an attorney at law, Kansas attorney registration number 20476. His last registration address with the clerk of the appellate courts of Kansas is . . . Hiawatha, Kansas . . . . The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on April 26, 2002.

"DA11078 and DA1152

"9.      In 2010, two complaints were filed against the respondent. Following the investigation, the respondent entered into the attorney diversion program in connection

2

with the two disciplinary complaints. The respondent did not successfully complete the diversion program.

"10.     Kan. Sup. Ct. R. 203(d)(2)(vii) provides the procedure to follow when an attorney fails to complete the terms and conditions of diversion:

'Failure to Complete the Attorney Diversion Program. If the Respondent fails to complete the agreed tasks in a timely manner at any point in the diversion process, he or she may be terminated from the program. If such a termination occurs, traditional formal disciplinary procedures will resume. When the complaint is returned to the formal disciplinary process, the Respondent's termination from the Attorney Diversion Program may be cited as an additional aggravating factor in recommending discipline and as a violation of Supreme Court Rule 207 and KRPC 8.1.'

"11.     Additionally, pursuant to Kan. Sup. Ct. R. 203(d)(2)(i), '[b]y entering into [the] diversion agreement, the Respondent stipulate[d] to the factual allegations and rule violations . . . that can be mutually agreed upon by the Disciplinary Administrator and the Respondent.' In the diversion agreement, the Disciplinary Administrator and the respondent agreed to the following facts and rule violations:

'8.     The Disciplinary Administrator and the Respondent stipulate to the following facts:

DA 11,078
a. [C.B.] retained Respondent in October 2007 for a divorce.

b. The case was heard in February 2008. There was difficulty getting a hearing date.

3

c. Respondent prepared a journal entry and sent it to opposing counsel.

d. Respondent did not receive the signed journal entry back, so on March 31, 2008, he sent opposing counsel another copy.

e. The journal entry was filed April 7, 2008.

f. The QDRO provided Respondent's client receive 100% of a 401K that was administered by Albaugh, Inc. The same day as the hearing, February 29, 2008, Respondent sent a request to Albaugh asking for advice on how to proceed.

g. The QDRO paperwork was complete on August 14, 2008.

h. Respondent admits he forgot about the QDRO until the next January.

i. Respondent contacted Albaugh on how to withdraw the funds. By this time, the account had lost $3000 due to the decline in the stock market. However, at the time of the divorce, the ex-husband was only 60% vested and there was a 10% early withdrawal penalty. The actual financial harm to the client from the delay is estimated to be less than $2,000.

j. The same client, in the spring of 2009, engaged in a relationship with a man who was willing to adopt her son.

4

k. The ex-husband consented to the adoption and signed a consent form in April 2009.

l. Complainant requested the adoption be completed before the child started school, so he could enter school with his name already changed.

m. Respondent suggested they wait on the adoption until after they were married.

n. Complainant got married in September 2009.

o. The adoption case was not set until December 2009. The court would not accept the consent form signed by the ex-husband because it had been signed in April 2009.

p. The Respondent tracked the ex-husband down and got another consent form signed. The adoption was completed.

q. The Respondent waived his fee and did not require Complainant to pay the filing fee. Respondent refunded $300.00 of his $500.00 retainer and gave Complainant $500.00 in cash to be used to buy Christmas presents.

DA 11,152

a. [C.M.B.] engaged Respondent in February 2009 for help in dissolution of a partnership. No fee was paid.

b. A petition for dissolution of partnership and for partition was filed in April 2009.

c. Motions for default judgments were filed in June 2009.

d. Respondent had difficulty obtaining service on all parties.

e. In December 2009, Respondent apologized to Complainant for the delay. This was one of the very few contacts Respondent had with Complainant, despite Complainant's attempts to contact him.

f. In February 2010, Complainant attempted to secure new counsel.

g. In March 2010, Complainant threatened to file a disciplinary action against Respondent. Respondent did not contact Complainant. A complaint was filed in July 2010.

'9.     The Disciplinary Administrator and the Respondent agree that the Respondent violated KRPC 1.3, 1.4, 1.8(e) and 3.2.'

"DA11784

"12.     On March 13, 2013, N.R. filed a complaint against the respondent for issues arising out of the respondent's representation of N.R. in a child in need of care proceeding. It appears that N.R. complained that the respondent failed to appear in court for a hearing, that he failed to return her telephone calls, and that he provided her with bad advice on how to get her children returned to her custody. [The review committee of

6

the Kansas Board for Discipline of Attorneys determined that probable cause did not exist to conclude that the respondent violated the Kansas Rules of Professional Conduct with regard to the respondent's representation of N.R. Case number DA11784 is before the hearing panel solely on the allegation that the respondent failed to cooperate in the disciplinary investigation.]

"13.    On March 22, 2013, Ms. Knoll wrote to the respondent, enclosed a copy of N.R.'s complaint, and directed the respondent to provide a written response to the complaint within 20 days. The respondent failed to provide a written response to the complaint.

"14.    Thereafter, the disciplinary administrator referred N.R.'s complaint to the Topeka Ethics and Grievance Committee for investigation. Lucky DeFries, chair of the Topeka Ethics and Grievance Committee, appointed Stephen W. Cavanaugh to investigate the complaint. On April 16, 2013, and on May 7, 2013, Mr. Cavanaugh wrote to the respondent, directing the respondent to provide a written response to the complaint filed by N.R. The respondent failed to provide a written response as directed by Mr. Cavanaugh.

"15.    On June 3, 2013, William C. Delaney, special investigator for the disciplinary administrator was assigned to attempt to locate the respondent. On June 6, 2013, Mr. Delaney personally contacted the respondent at the Brown County Courthouse in Hiawatha, Kansas. Mr. Delaney met with the respondent at the courthouse to discuss the complaint filed by N.R. The respondent informed Mr. Delaney that he was aware of the complaint and had no excuse for failing to provide a written answer to the complaint. The respondent promised to provide a written response to the complaint within the next few days. The respondent stated that he was not 'snubbing' the disciplinary administrator's office but that he had a number of issues at that time. Mr. Delaney provided the respondent with 10 additional days to provide a written response to N.R.'s complaint.

7

"16.    On June 13, 2013, the respondent forwarded a written response to the complaint filed by N.R., to Mr. Delaney.

"*Conclusions of Law*

"17.    Based upon the respondent's admissions in his answer, the respondent's stipulations in the diversion agreement, and the findings of fact above, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.8(e), KRPC 3.2, KRPC 8.1, and Kan. Sup. Ct. R. 207, as detailed below.

"KRPC 1.3

"18.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent C.B. by failing to take action on the QDRO and by failing to timely complete the adoption. The respondent failed to diligently represent C.M.B. by failing to timely get service on the defendant and prosecute the dissolution of partnership case. Because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"19.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed remain in contact with C.M.B., despite C.M.B.'s attempts to contact the respondent. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.8(e)

"20.    The respondent also violated KRPC 1.8(e). KRPC 1.8(e) provides:

8

'A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

'(1)    a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and

'(2)    a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.'

In his representation of C.B., the respondent paid the filing fee and gave C.B. $500 in cash to be used to purchase Christmas presents. As such, the hearing panel concludes that the respondent violated KRPC 1.8(e).

"KRPC 3.2

"21.    An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. The respondent caused unnecessary delay in C.B.'s adoption case and in C.M.B.'s dissolution of partnership case. Thus, the hearing panel concludes that the respondent violated KRPC 3.2.

"KRPC 8.1 and Kan. Sup. Ct. R. 207(b)

"22.    Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary

Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

Kan. Sup. Ct. R. 207(b). The respondent knew that he was required to forward a written response to the initial complaints—he had been repeatedly instructed to do so in writing by Ms. Knoll and Mr. Cavanaugh. Because the respondent knowingly failed to provide a timely written response to the initial complaint filed by N.R., the hearing panel concludes that the respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

*"American Bar Association
Standards for Imposing Lawyer Sanctions*

"23.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"24.     *Duty Violated*.  The respondent violated his duty to his clients to provide diligent representation and adequate communication. The respondent also violated his duty to the legal system to expedite litigation. Finally, the respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"25.     *Mental State*.  The respondent knowingly violated his duties.

"26.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to C.B., C.M.B., the legal system, and the legal profession. The harm to C.B. can be quantified at less than $2,000.

10

"Aggravating and Mitigating Factors

"27.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"28.     *A Pattern of Misconduct*.  The respondent has engaged in a pattern of misconduct.

"29.     *Multiple Offenses*.  The respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.8(e), KRPC 3.2, KRPC 8.1, and Kan. Sup. Ct. R. 207. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"30.     *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The respondent failed to comply with requests for information made by the disciplinary administrator. As such, the hearing panel concludes that the respondent obstructed the disciplinary proceeding.

"31.     *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 2002. At the time of the misconduct, the respondent has been practicing law for more than 10 years.

"32.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"33.     *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

11

"34. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from major depressive disorder. It is clear that the respondent's depression contributed to his misconduct.

"35. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* While the respondent failed to cooperate during the disciplinary investigation, he fully cooperated with the disciplinary process during the prosecution of the formal complaint. Additionally, the respondent admitted the facts that gave rise to the violations.

"36. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of the bar of Hiawatha, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by the testimony of a number of attorneys.

"37. *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"38. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

'4.33 Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be

12

materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

'4.42    Suspension is generally appropriate when:

'(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

'(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.43    Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"39.    The disciplinary administrator and the respondent recommended that the respondent be placed on probation, under the respondent's proposed plan of probation. The disciplinary administrator would have recommended that the respondent be suspended for a period of six months followed by a reinstatement hearing, under Kan. Sup. Ct. R. 219, had the respondent not taken so many proactive steps to get his house in order.

"40.    Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent

13

be suspended for a period of six months. The hearing panel further recommends that the suspension be suspended and the respondent be placed on probation for a period of 2 years, subject to the following terms and conditions:

> "a. *KALAP*. The respondent will comply with the terms and conditions of the monitoring agreement, executed on September 20, 2013. If the monitoring attorney or Anne McDonald determines that the monitoring agreement should be changed or extended, the respondent will consent to the changes or extensions. The respondent will provide the monitoring attorney and KALAP with an appropriate release of information to allow the monitoring attorney and KALAP to provide information to the practice supervisor, the counselor, and the disciplinary administrator.

> "b. *Inventory of Cases and Clients.* The respondent will maintain an inventory of all open cases and clients. The respondent will update the inventory on a daily basis. The inventory will include the client's name, the client's contact information, the client's goal, the tasks that remain to be completed, all pending deadlines, and the forum (if any) in which the matter is pending.

> "c. *Client Communication*. The respondent will return all telephone calls within 48 business hours. The respondent will contact each client by letter at least once every three months regarding the status of the matter.

> "d. *Restitution*. The respondent will refund $2,000 to C.B. within 90 days of the date of this report.

> "e. *Practice Supervision*. William R. McQuillan will serve as the respondent's practice supervisor. The respondent will provide the practice supervisor with an updated copy of the inventory of cases and clients on a monthly basis. The respondent will allow the practice

14

supervisor access to his client files, calendar, and trust account records. The respondent will meet with the practice supervisor once a week. The meetings will be face-to-face or by telephone, in the judgment of the practice supervisor. The respondent will comply with any requests made by the practice supervisor. The practice supervisor will prepare a quarterly report to the disciplinary administrator regarding the respondent's status on probation. The respondent will provide the practice supervisor with an appropriate release of information to allow the practice supervisor to provide such information to the counselor, KALAP, the monitoring attorney, and the disciplinary administrator. The practice supervisor will be acting as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. As supervising attorney, the practice supervisor will be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the course of his supervising activities.

"f.     *Psychological Treatment*. The respondent will continue his treatment for depression throughout the period of supervised probation, unless the counselor determines that continued treatment is no longer necessary. The counselor will notify the practice supervisor and the disciplinary administrator in the event that the respondent discontinues treatment against the recommendation of the counselor during the probationary period. The respondent will provide the counselor with an appropriate release of information to allow the counselor to provide such information to the practice supervisor, KALAP, the monitoring attorney, and the disciplinary administrator.

"g.     *Medication*. The respondent will comply with the prescription medication plan developed by this primary care physician or psychiatrist.

"h.     *Office Procedures*. Within ten days of this report, the respondent will provide the practice supervisor and the disciplinary

15

administrator with written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken representation. The respondent will modify that procedure if directed to do so by the practice supervisor or the disciplinary administrator. The respondent will follow the written office procedures.

"i.     *Calendar*. On a weekly basis, the respondent and the supervising attorney will review the respondent's calendar to ensure that appropriate notices have been sent, that the respondent is properly prepared for all events on his scheduled, and that all files have been properly updated.

"j.     *Mail*. Someone, other than the respondent, should be charged with opening the respondent's mail on a daily basis.

"k.     *Billing, Fee Agreements, and Conflict List*. The respondent will review all billing procedures with the practice supervisor. The respondent will have a written fee agreement on each and every case in his inventory. A conflict list will be prepared and kept at the office to ensure that no conflicts arise in any of the new cases the respondent undertakes. The conflict list will be reviewed by the supervising attorney.

"l.     *Audits*. Within thirty (30) days of the date of this report, the practice supervisor will conduct an initial audit of the respondent's files. Thereafter, every six months, the practice supervisor will conduct additional audits. If the practice supervisor discovers any violations of the Kansas Rules of Professional Conduct, the practice supervisor will include such information in his report. The practice supervisor will provide the disciplinary administrator and the respondent with a copy of each audit report. The respondent will follow all recommendations and correct all deficiencies noted in the practice supervisor's periodic audit reports. At the conclusion of the period of probation, the respondent will

16

submit to the practice supervisor a detailed account of his active files and the practice supervisor will conduct a final audit.

"m.     *Continued Cooperation*. The respondent will continue to cooperate with the disciplinary administrator. If the disciplinary administrator requests any additional information, the respondent will timely provide such information.

"n.     *Additional Violations*. The respondent will not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the respondent will immediately report such violation to the practice supervisor and the disciplinary administrator. The disciplinary administrator will take immediate action directing the respondent to show cause why the probation should not be revoked.

"41.     Costs are assessed against the respondent in an amount to be certified by the office of the disciplinary administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the disciplinary panel's findings, and the parties' arguments to determine whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

17

Respondent was given adequate notice of the formal complaint, to which he filed an answer. The Disciplinary Administrator's office and respondent entered into a written stipulation upon which the panel's final hearing report was based in part. Respondent filed no exceptions to the final hearing report. As such, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2013 Kan. Ct. R. Annot. 375).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4 (2013 Kan. Ct. R. Annot. 484) (communication); 1.8(e) (2013 Kan. Ct. R. Annot. 527) (conflict of interest); 3.2 (2013 Kan. Ct. R. Annot. 587) (expediting litigation); 8.1 (2013 Kan. Ct. R. Annot. 646) (timely response to disciplinary inquiry); Kansas Supreme Court Rule 207 (2013 Kan. Ct. R. Annot. 336) (duty to disciplinary administrator), and it supports the panel's conclusions of law. We adopt the panel's findings and conclusions.

The only remaining issue for this court is determining the appropriate discipline for respondent's violations. At the hearing before this court, the Disciplinary Administrator and respondent jointly requested that this court adopt the hearing panel's recommended discipline, as recited in the hearing panel's report at Paragraph 40. The hearing panel's recommendations are advisory only and do not prevent us from imposing greater or lesser sanctions. Supreme Court Rule 212(f) (2013 Kan. Ct. R. Annot. 375); see *In re Kline*, 298 Kan. 96, 212-13, 311 P.3d 321 (2013).

We agree with the parties that hearing panel's recommendation as recited in Paragraph 40 of its report is the appropriate discipline, with the modification that if the probation is revoked and a suspension invoked due to respondent's failure to comply with

18

the terms and conditions in the probation plan, he must have a reinstatement hearing pursuant to Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407).

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Andrew M. Delaney be suspended from the practice of law in the state of Kansas, in accordance with Supreme Court Rule 203(a)(2) and (5) (2013 Kan. Ct. R. Annot. 300), for a 6-month period but imposition of this discipline shall be stayed and respondent placed on probation under the terms and conditions set out in Paragraph 40 of the hearing panel report as modified by this court in this decision for a 2-year period beginning the date this opinion is filed.

IT IS FURTHER ORDERED that if Andrew M. Delaney during his probationary period fails to comply with the terms and conditions of his probation, a show cause order shall issue and this court will take whatever disciplinary action appears just and proper without further formal proceedings.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 112,169 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.