IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,208

In the Matter of ANDREW M. DELANEY,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 6, 2019. One-year suspension, stayed during an additional extended probation period of two years.

*Penny R. Moylan*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*J. David Farris*, of Farris and Fresh Law Offices, of Atchison, argued the cause, and *Andrew M. Delaney,* respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Andrew M. Delaney, of Hiawatha, an attorney admitted to the practice of law in Kansas in 2002.

On October 23, 2018, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On November 12, 2018, the respondent filed an answer to the complaint; on December 17, 2018, respondent filed a proposed probation plan. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on January 9, 2019, where the respondent was personally present and was represented by counsel. The hearing panel determined the respondent violated KRPC 1.1 (2019 Kan. S.

1

Ct. R. 295) (competence); 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 1.4(a) (2019 Kan. S. Ct. R. 299) (communication); 1.7(a) (2019 Kan. S. Ct. R. 308) (conflict of interest).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"Prior Discipline

"8.     On November 26, 2014, the Supreme Court entered an order suspending the respondent's license to practice law for a period of six months having violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.8 (conflict of interest), KRPC 3.2 (expediting litigation), KRPC 8.1 (cooperation), and Kan. S. Ct. R. 207 (cooperation). The Supreme Court suspended the imposition of discipline and placed the respondent on probation for a period of two years. The probation plan included a term that required the respondent to refrain from violating the Kansas Rules of Professional Conduct. *In re Delaney*, 300 Kan. 1090, 1101, 338 P.3d 11 (2014). Even though more than two years has passed, the respondent remains on probation because the respondent did not seek release from probation. *See* Rule 211(g)(8).

"DA12721

"9.     On November 14, 2014, A.Y. retained the respondent to represent her in a divorce action filed in Brown County District Court, case number 14-DM-179. As part of the divorce case, A.Y. wanted the court to enter an order that she would not be responsible for debt of her estranged husband's vehicle.

"10.     On September 28, 2015, the court conducted a trial in the divorce case. A.Y. testified that she wanted her name removed from the vehicle's title, so she would

2

not be responsible for the associated debt. The court awarded the vehicle to A.Y.'s ex-husband, ordered that the ex-husband be responsible for outstanding debt owed on the vehicle, and ordered that A.Y.'s ex-husband hold A.Y. harmless from the collection of any debt associated with the vehicle. The bank who held the note on the vehicle was not obligated to refrain from collecting the debt associated with the vehicle from A.Y. Thus, A.Y. remained responsible for the debt associated with her ex-husband's vehicle, subject to indemnification by her ex-husband under the court's order.

"11.     The court filed the journal entry of divorce on October 21, 2015. Shortly thereafter, A.Y. began receiving notices and phone calls regarding the vehicle's insurance as well as past due payments owed on the vehicle. Beginning November 2, 2015, A.Y. sent the respondent multiple email messages, informing him that her ex-husband was not paying bills associated with the vehicle. A.Y. requested that the respondent obtain a court date so the matter could be resolved by the court. The respondent did not reply to A.Y.'s messages.

"12.     On February 24, 2016, the respondent met with A.Y to discuss her options to resolve her problem. The respondent agreed to attempt to resolve the problem by contacting opposing counsel.

"13.     After speaking to opposing counsel by telephone, on March 18, 2016, the respondent sent him a letter, requesting that A.Y.'s ex-husband seek to have her name removed from any promissory note or loan on the vehicle. The respondent specifically advised opposing counsel that the matter needed to be resolved within the next 10 days or 'my office has been authorized to pursue contempt proceedings in order to obtain satisfaction.' A.Y.'s ex-husband did not take the requested action.

"14.     A.Y. continued to send the respondent email messages seeking a resolution of her problem. The respondent did not reply to many of A.Y.'s messages.

"15.     On September 7, 2016, the respondent contacted the creditor and advised the creditor of the contents of the journal entry. The respondent requested that the

3

creditor remove A.Y.'s name from the note. The creditor refused to remove A.Y.'s name from the note.

"16.    On September 20, 2016, the respondent met with A.Y. She executed an affidavit in support of a motion to request a citation in contempt based on the ex-husband's failure to remove A.Y.'s name from the truck title and/or loan documents. The respondent did not have an address for the ex-husband. While the respondent alleges that he instructed A.Y. to provide him with her ex-husband's current address at that time, A.Y. expressly denies that the respondent made that request at that time. The hearing panel is unable to determine, from the record before it, whether the respondent requested that A.Y. provide him with her ex-husband's address at that time.

"17.    On November 9, 2016, A.Y. sent an email message to the respondent, informed the respondent that she wanted to have a hearing as soon as possible, and stated that because her ex-husband was late on the vehicle payments that she was unable to obtain a car loan. The respondent did not respond to A.Y.'s email message.

"18.    On December 10, 2016, A.Y. again sent an email message to the respondent and asked when they would be going to court. The respondent did not reply to A.Y.'s December 10, 2016, email message.

"19.    On December 27, 2016, the disciplinary administrator received a complaint filed by A.Y. against the respondent. A.Y. complained of the respondent's lack of diligence and communication.

"20.    On December 29, 2016, the disciplinary administrator sent the respondent a copy of A.Y.'s complaint and informed the respondent that the complaint had been docketed for investigation.

"21.    Prior to receiving a copy of the complaint, on January 3, 2017, the respondent sent A.Y. an email advising her that he had a request to hold A.Y.'s ex-husband in contempt ready to file, but that before he could file the request, he needed to have A.Y.'s ex-husband's address. That same day, A.Y. replied to respondent's email,

4

providing her ex-husband's work address to the respondent. The respondent did not file the request with the court to hold A.Y.'s husband in contempt.

"22. On January 5, 2017, the respondent sent a written response to the complaint filed by A.Y. to the disciplinary administrator's office.

"23. On January 24, 2017, the respondent filed a motion to withdraw from his representation of A.Y., alleging a break-down in the attorney-client relationship. That same day, the respondent wrote to A.Y., explained that he was withdrawing from the representation, and provided her with a copy of the draft motion for contempt and affidavit of contempt. The motion to withdraw was granted on February 7, 2017.

"DA12987

"24. Since 2008, the respondent has served as the Kickapoo tribe's sole public defender and legal aid attorney.

"25. S.R., the Kickapoo tribe's fire chief, recruited A.N., a volunteer firefighter, and L.R. a juvenile volunteer firefighter to set fires on the Kickapoo reservation so that the tribe could seek reimbursement from the Bureau of Indian Affairs for the costs associated with putting out the fires. Between July 7, 2015 and November 4, 2015, L.R. and A.N. intentionally set fires on the Kickapoo reservation.

"26. On November 14 and 15, 2015, members of the Kickapoo tribal law enforcement spoke to L.R., a 17 year-old volunteer firefighter with the Kickapoo Tribal Volunteer Fire Department. During the law enforcement interview, L.R. admitted his involvement in setting the fires. L.R. also disclosed S.R. and A.N.'s involvement in setting the fires.

"27. On November 19, 2015, L.R. and his parents met with the respondent and explained L.R.'s involvement in the fires. L.R. and his parents authorized the respondent to contact the tribal prosecutor, Brad Lippert, to see if the matter could be quickly resolved with a plea agreement. During the November 19, 2015, meeting, the

5

respondent did not ask L.R. the names of the other individuals involved in setting the fires. During that meeting, the underlying facts of the case were not discussed in detail.

"28.     On November 23, 2015, the respondent advised Mr. Lippert that L.R. was interested in resolving any potential charges arising from the arson investigation through a plea agreement. Mr. Lippert advised the respondent that if L.R. made a complete and truthful statement to tribal authorities about his involvement in the fires, Mr. Lippert would recommend probation.

"29.     The respondent relayed Mr. Lippert's offer to L.R.'s mother. L.R.'s mother told the respondent that they would contact the tribal police department so that L.R. could make a complete and truthful statement to tribal authorities.

"30.     On March 28, 2016, L.R. was charged as a juvenile in the tribal court with arson in the second degree, larceny, criminal conspiracy to commit arson in the second degree, and criminal conspiracy to commit larceny. The petition listed S.R. as a possible witness.

"31.     The next day, on March 29, 2016, A.N. was charged in tribal court with arson in the second degree, larceny, criminal conspiracy to commit arson in the second degree, and criminal conspiracy to commit larceny. The complaint listed L.R. and S.R. as witnesses. Also on March 29, 2016, S.R. was charged in tribal court with criminal conspiracy to commit arson in the second degree, larceny, and criminal conspiracy to commit larceny. The complaint listed L.R. and A.N. as witnesses.

"32.     On April 4, 2016, L.R.'s mother informed the respondent that a federal investigator wanted to speak to L.R. about his involvement with the fires. The respondent referred L.R.'s mother to Carl Folsom of the federal public defender's office. L.R.'s mother contacted Mr. Folsom, who informed her that L.R. did not financially qualify for services from the federal public defender's office.

"33.     On April 6, 2016, L.R.'s mother informed the respondent that Mr. Folsom was unable to represent L.R.

6

"34.     L.R. received a summons to appear in the tribal court on April 26, 2017. L.R.'s mother notified the respondent's office of the summons. The respondent's staff told L.R.'s mother that they should arrive in court early that day so the respondent would have time to discuss the case with them prior to the hearing.

"35.     On April 25, 2016, respondent was appointed to represent S.R. and A.N. in the tribal court cases.

"36.     On April 26, 2016, the tribal court appointed the respondent to represent L.R. By this time, Mr. Lippert had informed the respondent that if L.R. pled guilty to arson in the second degree, Mr. Lippert would dismiss the remaining charges and recommend probation. L.R. accepted the plea offer.

"37.     The respondent did not review any discovery or discuss the facts of the underlying criminal matter with L.R. prior to providing him advice regarding the plea agreement.

"38.     On April 26, 2016, Mr. Lippert and the respondent informed the tribal court of their plea agreement. The tribal court accepted L.R.'s plea. The tribal court sentenced L.R. to 12 months of probation and ordered him to make restitution for any damages his actions caused. The respondent continued to represent L.R. at subsequent status hearings regarding the amount of restitution to be paid by L.R.

"39.     Even though he was appointed in April, 2016, the respondent first reviewed A.N.'s and S.R.'s criminal complaints in July 2016. At that time, the respondent realized that the three cases were companion cases.

"40.     Mr. Lippert relayed plea offers to the respondent for S.R. and A.N.

a.     Mr. Lippert's plea offer to S.R. required S.R. to plead no contest to criminal conspiracy to commit arson and in exchange Mr. Lippert would dismiss the remaining charges and recommend probation.

7

b.       Mr. Lippert's plea offer to A.N. required A.N. to plead no contest to arson in the second degree and in exchange Mr. Lippert would dismiss the remaining charges and recommend probation.

"41.     The tribal court scheduled hearings in S.R.'s and A.N.'s cases for July 25, 2016. Prior to the hearing that day, the respondent met with S.R. and A.N.

a.       The respondent advised them of a potential conflict of interest. The respondent also relayed Mr. Lippert's plea offers to S.R. and A.N.

b.       The respondent informed them both that because he had not received discovery in their cases, he could not discuss the strength of the evidence against them.

c.       S.R. and A.N. each expressed that they wanted to accept the plea offers that day. Consequently, S.R. and A.N. entered no contest pleas pursuant to the plea agreements before the tribal court on July 25, 2016. The tribal court scheduled sentencing for September 26, 2016.

d.       The respondent did not explain the risks associated with his representation of L.R., S.R., and A.N. Further, the respondent did not obtain consent from L.R., S.R., and A.N. to continue to represent them despite the conflicts of interest.

"42.     On September 21, 2016, S.R. and A.N. were charged in federal court with four counts of wire fraud. L.R. was a witness for the prosecution in the criminal case against S.R. and A.N. The federal court appointed Carl Folsom to represent S.R.

"43.     On September 26, 2016, S.R. and A.N. were each sentenced in tribal court to six months in jail. The tribal court suspended the execution of the sentence and placed S.R. and A.N. on probation for one year. A term of probation required both S.R.

8

and A.N. to serve two weekends in jail. The court also ordered S.R. and A.N. to pay restitution, in an amount to be determined at a later date.

"44. On May 31, 2017, the federal prosecutor filed a superseding indictment against S.R. and A.N. in the federal criminal case. In the superseding indictment, S.R. was charged with three counts of wire fraud, one count of theft of government property, and four counts of false claims, and A.N. was charged with one count of misprision of felony.

"45. On June 13, 2017, A.N. pled guilty to one count of misprision of felony in federal court.

"46. Prior to a July 24, 2017, tribal court hearing, S.R. asked respondent about withdrawing his plea because of the pending federal indictment. The respondent advised S.R. that if he wanted to withdraw his plea, he would need to get new counsel because the respondent would be a witness.

"47. On August 18, 2017, Mr. Folsom filed a motion to suppress the testimony of L.R. in S.R.'s federal case. Mr. Folsom asserted that because the respondent represented both L.R. and S.R. in tribal court, it would be unduly prejudicial for L.R. to testify against S.R. The court heard the motion to suppress on September 19, 2017. The respondent testified at the hearing and acknowledged that his representation of A.N., L.R., and S.R. presented a potential conflict of interest under KRPC 1.7.

"48. On September 25, 2017, the tribal court held a hearing on restitution in both S.R.'s and A.N.'s case. At that time, S.R. requested and was granted a new attorney. The amount of restitution was in dispute because A.N. argued that she should not be responsible for paying for the costs associated with fires which she did [not] set. The conflict between the respondent's three clients regarding restitution is an example of one of the many problems created by the respondent representing three co-defendants.

9

"49.     For a reason unrelated to the respondent's misconduct, on motion by the federal prosecutor, on November 9, 2017, the federal district court dismissed the criminal charges against S.R., without prejudice.

"50.     Again, for a reason unrelated to the respondent's misconduct, on November 16, 2017, A.N. filed a motion to withdraw plea of guilty. On December 1, 2017, the court granted A.N.'s motion to withdraw her guilty plea. That same day, the federal prosecutor filed a motion to dismiss the case against A.N. On December 6, 2017, the court granted the motion to dismiss the case against A.N., without prejudice.

"51.     On December 8, 2017, the disciplinary administrator received a complaint from Mr. Folsom against the respondent. The respondent provided written responses to the complaint filed by Mr. Folsom.

"*Conclusions of Law*

"52.     Based upon the respondent's stipulations as well as the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), and KRPC 1.7 (conflict of interest), as detailed below.

"KRPC 1.1

"53.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent did not provide competent representation to L.R., S.R., and A.N. by failing to learn the facts underlying his clients' criminal charges in tribal court. Because the respondent failed to exercise the necessary thoroughness and preparation in representing his clients, the hearing panel concludes that the respondent violated KRPC 1.1.

10

## "KRPC 1.3

"54.      Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent A.Y. The respondent failed to either take action on behalf of A.Y. to resolve her issue or inform A.Y. that he could not achieve the relief she sought. Thus, the hearing panel concludes that the respondent failed to represent A.Y. with reasonable diligence and promptness, in violation of KRPC 1.3.

## "KRPC 1.4

"55.      KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to respond to many of A.Y.'s email communications. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.7

"56.      A lawyer has a concurrent conflict of interest if:

'(1)     the representation of one client will be directly adverse to another client; or

'(2)     there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.' KRPC 1.7(a).

A lawyer may not represent a client when the lawyer has a concurrent conflict of interest unless the lawyer takes certain steps. *See* KRPC 1.7(b). Specifically, a lawyer is prohibited from representing a client when there is a concurrent conflict of interest unless 'each affected client gives informed consent, confirmed in writing.' KRPC 1.7(b)(4). The

11

respondent failed to properly inform L.R., S.R., and A.N. of the conflict of interest. Further, L.R., S.R., and A.N. did not consent to the respondent's continued representation when concurrent conflicts of interest existed. As such, the hearing panel concludes that the respondent violated KRPC 1.7(a).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"57.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"58.     *Duty Violated*. The respondent violated his duty to A.Y. to provide prompt and diligent representation and adequate communication. The respondent violated his duty to L.R., S.R., and A.N. to provide thorough representation. The respondent also violated his duty to L.R., S.R., and A.N. to recognize the conflicts of interest and refrain from representation when conflicts of interest existed.

"59.     *Mental State*. The respondent knew or should have known he was violating his duties.

"60.     *Injury*. As a result of the respondent's misconduct, the respondent caused potential injury to his clients and actual injury to the administration of justice.

"Aggravating and Mitigating Factors

"61.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

12

a. *Prior Disciplinary Offenses*. As detailed in paragraph 8 above, in 2014, the respondent was disciplined. As a result of the 2014 attorney disciplinary case, the respondent remains on probation.

b. *Pattern of Misconduct.* The 2014 attorney disciplinary case involved the same type of misconduct. As a result, the hearing panel concludes that the respondent engaged in a pattern of misconduct.

c. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), and KRPC 1.7 (conflict of interest). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"62. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a. *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct was not motivated by dishonesty or selfishness.

b. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. In the 2014 attorney disciplinary case, the respondent's misconduct was mitigated by personal or emotional problems. Specifically, the respondent suffered from depression and the respondent's depression contributed to his misconduct in that case. The respondent continues to suffer from depression and it appears that the respondent's depression may also have contributed to his misconduct regarding A.Y. Further, it appears that the respondent has made significant progress in the treatment of his depression since the 2014 attorney disciplinary case.

c. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment*

13

*of the Transgressions.* The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the underlying facts as well as the rule violations.

d. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent is an active and productive member of the bar of Hiawatha, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation.

e. *Remorse.* At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"63. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

'4.33 Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

'4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

14

(b)     a lawyer engages in a pattern of neglect and
causes injury or potential injury to a client.

'4.43   Reprimand is generally appropriate when a lawyer is negligent
and does not act with reasonable diligence in representing a
client, and causes injury or potential injury to a client.'

"*Recommendations of the Parties*

"64.    Ms. Moylan recommended that the respondent be suspended from the practice of law for a period of one year. Ms. Moylan also recommended that the imposition of the suspension be suspended and that the respondent's probation be extended by two years. Finally, Ms. Moylan recommended that the respondent's plan of probation be amended to include that: (1) the respondent maintain a communication log and share the communication log with his practice supervisor on a weekly basis, (2) the respondent refrain from practicing domestic law, (3) the respondent conduct a conflict check before representing clients, and (4) the respondent conduct an audit of all domestic law cases to make sure that he has withdrawn from representation in each case.

"65.    Counsel for the respondent joined in the recommendation made by Ms. Moylan.

"*Consideration of Probation*

"66.    When a respondent requests probation, the hearing panel is required to consider Kan. Sup. Ct. R. 211(g)(3), which provides:

'(3)    The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)     the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the

15

Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"67. The respondent developed a workable, substantial, and detailed plan of probation. The respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel at least 14 days prior to the hearing on the formal complaint. The respondent put the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan. The misconduct, in this case, can be corrected by probation. Placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.

"*Recommendation of the Hearing Panel*

"68. Based on the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of one year. The hearing panel also unanimously recommends that the imposition of the discipline be suspended and the respondent's period of probation be extended by two years.

"69. The hearing panel recommends that the respondent's probation be made subject to the following terms and conditions:

16

a. *Practice Limitation*. The respondent will not accept any new domestic law cases. The respondent will make arrangements to locate a new attorney for any current clients with domestic law cases. The respondent will conduct a thorough review of his files as well as the records of the district courts where the respondent practices to ensure that he has withdrawn from all domestic law cases.

b. *KALAP*. The respondent will comply with the terms and conditions of the monitoring agreement. If the monitoring attorney or KALAP determines that the monitoring agreement should be changed or extended, the respondent will consent to the changes or extensions. The respondent will provide the monitoring attorney and KALAP with an appropriate release of information to allow the monitoring attorney and KALAP to provide information to the practice supervisor, the counselor, and the disciplinary administrator.

c. *Inventory of Cases and Clients.* The respondent will maintain an inventory of all open cases and clients. The respondent will update the inventory on a daily basis. The inventory will include the client's name, the client's contact information, the client's goal, the tasks that remain to be completed, all pending deadlines, and the forum (if any) in which the matter is pending.

d. *Client Communication*. The respondent will return all telephone calls within 48 business hours. The respondent will respond to all email messages within 48 business hours. The respondent will contact each client by letter at least once every three months regarding the status of the matter. The respondent will maintain a communication log. The respondent will share the communication log with the practice supervisor at the weekly meetings.

e. *Practice Supervision*. William R. McQuillan will continue to serve as the respondent's practice supervisor. The respondent will provide the practice supervisor with an updated copy of the inventory of cases and clients on a monthly basis. The respondent will allow the practice supervisor access to his client files, calendar, and trust account records. The respondent will meet with

17

the practice supervisor once a week. The meetings will be face-to-face or by telephone, in the judgment of the practice supervisor. The respondent will comply with any requests made by the practice supervisor. The practice supervisor will prepare a quarterly report to the disciplinary administrator regarding the respondent's status on probation. The respondent will provide the practice supervisor with an appropriate release of information to allow the practice supervisor to provide such information to the counselor, KALAP, the monitoring attorney, and the disciplinary administrator. The practice supervisor will be acting as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. As supervising attorney, the practice supervisor will be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the course of his supervising activities.

f.      *Psychological Treatment*. The respondent will continue his treatment for depression throughout the period of supervised probation, unless the counselor determines that continued treatment is no longer necessary. The counselor will notify the practice supervisor and the disciplinary administrator in the event that the respondent discontinues treatment against the recommendation of the counselor during the probationary period. The respondent will provide the counselor with an appropriate release of information to allow the counselor to provide such information to the practice supervisor, KALAP, the monitoring attorney, and the disciplinary administrator.

g.      *Medication*. The respondent will make an appointment with his primary care physician or psychiatrist to determine whether the prescription medication plan needs to be adjusted. The respondent will comply with the recommendations made by his primary care physician or psychiatrist.

h.      *Office Procedures*. The respondent will update the written office procedures to address the issues that arose in this case. The respondent will provide the practice supervisor and the disciplinary administrator with a copy of the updated written office procedures as directed by his practice supervisor. The respondent will modify that procedure if directed to do so by the practice

18

supervisor or the disciplinary administrator. The respondent will follow the written office procedures.

i.      *Calendar*. On a weekly basis, the respondent and the supervising attorney will review the respondent's calendar to ensure that appropriate notices have been sent, that the respondent is properly prepared for all events on his schedule, and that all files have been properly updated.

j.      *Mail*. Someone, other than the respondent, should continue to be charged with opening the respondent's mail on a daily basis.

k.      *Billing and Fee Agreements.* The respondent will continue to review billing procedures with the practice supervisor. The respondent will have a written fee agreement on each case in his inventory.

l.      *Conflict Check.* The respondent will develop a more effective conflict check process to ensure that he does not represent co-defendants or any other clients with conflicts of interest. The new conflict check process must be approved by the supervising attorney.

m.      *Audits*. The practice supervisor will continue to conduct an audit of the respondent's files every six months. If the practice supervisor discovers any violations of the Kansas Rules of Professional Conduct, the practice supervisor will include such information in his report. The practice supervisor will provide the disciplinary administrator and the respondent with a copy of each audit report. The respondent will follow all recommendations and correct all deficiencies noted in the practice supervisor's periodic audit reports. At the conclusion of the period of probation, the respondent will submit to the practice supervisor a detailed account of his active files and the practice supervisor will conduct a final audit.

19

n. *Continued Cooperation*. The respondent will continue to cooperate with the disciplinary administrator. If the disciplinary administrator requests any additional information, the respondent will timely provide such information.

o. *Additional Violations*. The respondent will not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the respondent will immediately report such violation to the practice supervisor and the disciplinary administrator. The disciplinary administrator may file a motion to revoke probation with the Supreme Court and the Chairman of the Kansas Board for Discipline of Attorneys. *See* Kan. S. Ct. R. 211(g)(9). If the respondent's probation is revoked and he is ordered to serve the suspension, the respondent must undergo a reinstatement hearing under Rule 219 prior to reinstatement.

"70. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2019 Kan. S. Ct. R. 257). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

20

The respondent was given adequate notice of the formal complaint and the amended formal complaint to which he filed an answer. The respondent was also given adequate notice of the hearings before the panel and the hearing before this court. He did not file exceptions to the hearing panel's final hearing report.

With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2019 Kan. S. Ct. R. 261). Furthermore, the facts before the hearing panel establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.1 (2019 Kan. S. Ct. R. 295) (competence); 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 1.4(a) (2019 Kan. S. Ct. R. 299) (communication); 1.7(a) (2019 Kan. S. Ct. R. 308) (conflict of interest). The evidence also supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for the respondent's violations. At the hearing before this court, the office of the Disciplinary Administrator recommended the same disciplinary sanction as the hearing panel. The hearing panel recommended that the respondent be suspended for a period of one year, that the imposition of such suspension be stayed, and that respondent's period of probation be extended by two years. The panel further recommended a number of actions for respondent during his suspension. The respondent requested probation according to his probation plan.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. Supreme Court Rule 212(f) (2019 Kan. S. Ct. R. 261). Here we note that the respondent developed another workable, substantial, and detailed plan of probation and implemented the proposed plan of probation prior to the hearing on the formal complaint. We agree with the hearing panel that placing the respondent on probation is in the best interests of the legal profession and the citizens of

21

the state. We therefore adopt the recommendation of the Disciplinary Administrator and the hearing panel and order that respondent's license be suspended for a period of one year, that the imposition of such suspension be stayed, and that respondent's period of probation be extended by two years. We further order that the respondent's probation be made subject to the additional terms and conditions as set forth in the final hearing panel's report. A minority of the court would impose a lesser sanction.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Andrew M. Delaney be and he is hereby disciplined by suspension for a period of one year in accordance with Supreme Court Rule 203(a)(2) (2019 Kan. S. Ct. R. 240), that the imposition of such suspension be stayed, and that respondent's period of probation be extended by two additional years effective on the date of the filing of this opinion.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

JARED B. JOHNSON, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Johnson was appointed to hear case No. 121,208 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court created by the retirement of Justice Johnson.